855 So.2d 906 (2003)
WHERE ANGELS TREAD, LTD., Bobby Elmer Smith and Janie Dupuy Smith, Plaintiffs-Appellants,
v.
Dr. Thomas DANSBY, Defendant-Appellee.
No. 37,689-CA.
Court of Appeals of Louisiana, Second Circuit.
September 24, 2003.
*907 Jack Wright, Jr., Monroe, for Appellants.
Watson, McMillin & Harrison, LLP by W. Michael Street, W. Brooks Watson, Monroe, for Appellee.
Jay B. Mitchell, Monroe, for John Giffen.
Before GASKINS and PEATROSS, JJ., & TRAYLOR (J. Pro Tempore).
PEATROSS, J.
This appeal arises from a summary judgment granted by the trial court in favor of Defendant, Dr. Thomas Dansby ("Dr.Dansby"), and against Plaintiffs, Where Angels Tread, LTD, Bobby Elmer Smith and Janie Dupuy Smith (collectively "Plaintiffs"). Plaintiffs now appeal the judgment of the trial court. For the reasons stated herein, we affirm.

FACTS
Plaintiffs Bobby and Janie Smith ("the Smiths") each owned 50 percent of the corporation Where Angels Tread, LTD. The corporation owned a building located at 2120 Cypress Street in West Monroe, Louisiana. This property was acquired with a loan from First Republic Bank, which held a mortgage on the premises. In 1999, the corporation began to face financial difficulties; and, in September 1999, First Republic Bank initiated foreclosure proceedings and seized the property. The Smiths attempted to find a financial solution to the corporation's difficulties and sought to lease the building.
*908 In February 2000, Mr. John Giffen ("Giffen"), the manager for the Monroe Medical Clinic, contacted the Smiths and expressed an interest in the building. Mr. Smith told Giffen that the property was listed with John Rea Realty. Giffen contacted John Rea Realty and informed Mr. Jay Johnson ("Johnson") of John Rea Realty that a group of doctors[1] might be interested in leasing the property as a medical office. Johnson drafted a document entitled "Offer to Lease," and presented it to Giffen at his office at the Monroe Medical Clinic. During the meeting, Dr. Dansby walked through the room and spoke to Johnson briefly, but he did not discuss the "Offer to Lease" with Johnson. Giffen signed his own name[2] to the "Offer to Lease," following a change to make it a five-year lease with a five-year option to purchase, as opposed to the original ten-year lease. Giffen gave Johnson a check for $6,000 as a deposit securing the property. The check was written on an account for the Monroe Medical Clinic[3]. Mr. Smith later accepted the offer on behalf of Where Angels Tread, LTD.
The "Offer to Lease" was to be effective May 1, 2000, and it set the rent at $6,000 per month for a period of 60 months, at the end of which the tenant would have the option to purchase the property. After the day the "Offer to Lease" was signed, no further payments were made to the Smiths. As a result, the Smiths were unable to make the mortgage payments on the property and First Republic Bank foreclosed.
On July 27, 2001, Plaintiffs filed a lawsuit against Dr. Dansby and Giffen for breach of the "Offer to Lease."[4] Plaintiffs claimed that Giffen had the actual or apparent authority of Dr. Dansby to enter into the agreement with Plaintiffs and that, as the principal, Dr. Dansby is also bound to the "Offer to Lease." Dr. Dansby denied that he gave Giffen the authority to enter into the "Offer to Lease" on his behalf. Giffen also insisted that he did not have the actual or apparent authority to bind Dr. Dansby to the "Offer to Lease." Both Plaintiffs and Dr. Dansby filed motions for summary judgment with the trial court. Plaintiffs' motion for summary *909 judgment was denied. In his motion for summary judgment, Dr. Dansby asserted that Plaintiffs had no factual support for their claim that Giffen had actual or apparent authority to bind him to the "Offer to Lease."
Finding that La. C.C. art. 2996[5] and Tedesco v. Gentry Development, Inc., 540 So.2d 960 (La.1989)[6], applied to the instant case, the trial judge held that written authority from the principal is required for an agent to execute the "Offer to Lease." The trial judge granted Dr. Dansby's motion for summary judgment and dismissed him from the case, finding that no evidence had been presented that Giffen had written authority to execute the "Offer to Lease" on Dr. Dansby's behalf, making any contract signed by Giffen unenforceable as to Dr. Dansby. Plaintiffs now appeal, raising the following assignment of error (verbatim):
Judge Dimos fell into error when he failed to recognize that apparent authority is applicable when the third party changes its position, reasonably relying on the representations that the agent had the actual authority to bind the principal, and ruling that there are no factual issues to be presented to the jury.

DISCUSSION
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action and the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
The initial burden of proof in summary judgment remains with the mover to show that no genuine issue of material fact exists. Johnson v. Sunbelt Builders, Inc., 02-0959 (La.App. 3d Cir.2/5/03), 838 So.2d 907. Under La. C.C.P. art. 966(C), once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Id.
When a motion for summary judgment is made and supported by law, an adverse party may not rest on the mere allegations or denials of pleading of the party, and the response of that party, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue for trial. Savage v. McConnell, 36,441 (La.App.2d Cir.10/23/02), 830 So.2d 414. Once a prima facie showing has been made that there is no genuine issue as to a material fact and that summary judgment should be granted, the burden shifts to the nonmover. Bertrand v. Air Logistics, Inc., 01-1655 (La.App. 3d Cir.6/19/02), 820 So.2d 1228. If the adverse party does not *910 respond, summary judgment, if appropriate, shall be rendered against him.

Actual Authority
In the case sub judice, Dr. Dansby argues that Giffen was not authorized to bind him to the "Offer to Lease" Plaintiffs' property and Plaintiffs failed to produce any evidence showing that Giffen had such authority. He further asserted that he never had any contact with the Smiths and they even stated in their depositions that they never saw any document that gave Giffen the authority to bind Dr. Dansby to the "Offer to Lease."[7] Giffen further stated in his deposition that he was not authorized to act on behalf of Dr. Dansby and never stated to Johnson or the Smiths that he was so authorized. We find that Dr. Dansby met his burden of showing no genuine issue as to a material fact; and, therefore, the burden shifted to Plaintiffs to show that a genuine issue as to a material fact remained as to whether or not Giffen had the authority to act on Dr. Dansby's behalf.
First, La. C.C. art. 2989 provides:
A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal.
More specifically, as previously stated, La. C.C. art. 2996 provides:
The authority to alienate, acquire, encumber, or lease a thing must be given expressly. Neither the property nor its location need be specifically described. (Emphasis added.)
We have thoroughly reviewed the record and we find no evidence in it that shows that Dr. Dansby, the principal, expressly gave Giffen the authority to sign the "Offer to Lease," on Dr. Dansby's behalf. Even though Plaintiffs assert that Giffen had the actual authority to look for a new office building for the doctors in the office[8], Giffen's alleged act of signing the "Offer to Lease" on Dr. Dansby's behalf would not be supported in law as binding Dr. Dansby because the principal is only bound to perform a contract that the mandatary made acting within the limits of his authority. La. C.C. art. 3020 provides:
The principal is bound to perform the contract that the mandatary, acting within the limits of his authority, makes with a third person. (Emphasis added.)
When Giffen acted beyond the authority he had in looking for a new office, he exceeded his authority. Further, La. C.C. art. 3010 provides, in pertinent part:
The principal is not bound to the mandatary to perform the obligations that the mandatary contracted which exceed the limits of the mandatary's authority unless the principal ratifies those acts.
The record does not contain any evidence to suggest that Dr. Dansby ratified the act of Giffen.[9] Since Plaintiffs failed to show that Giffen was given the express authority to enter into the "Offer to Lease," their only plausible argument is that Dr. Dansby *911 caused Plaintiffs to believe that Giffen was authorized to act on his behalf through apparent authority.

Apparent Authority
La. C.C. art. 3021 provides:
One who causes a third person to believe that another person is his mandatary is bound to the third person who in good faith contracts with the putative mandatary.
Plaintiffs claim that Dr. Dansby "clothed" Giffen with the apparent authority to act on his behalf. They argue that it was well known in the community of which the Smiths were part that Giffen conducted business on behalf of Dr. Dansby and that Giffen publicly held himself out to be Dr. Dansby's agent. The record does not support Plaintiffs' assertions. After an exhaustive review of the record, we find that Plaintiffs provided no evidence to show that it was well known in the community that Giffen was Dr. Dansby's agent or that Giffen held himself out to be Dr. Dansby's agent.
Plaintiffs charge that, because Giffen frequently wrote and signed checks on the Monroe Medical Clinic's account and because Dr. Dansby walked through the room the day Giffen and Johnson discussed and signed the "Offer to Lease," they believed that Giffen had the apparent authority to act on behalf of Dr. Dansby to sign the "Offer to Lease." We find no merit in Plaintiffs' charge. According to La. C.C. art. 3021, it is the actions of the principal and not the actions of the alleged agent that must cause a third person to believe that a person is the principal's agent; and, thus, the action of Giffen, the alleged agent, in writing the check payable by an entity that is not even a party to this lawsuit is irrelevant in showing that Giffen acted under the apparent authority to act for Dr. Dansby. Moreover, Dr. Dansby's pass through the room where Johnson and Giffen were discussing the "Offer to Lease" and his brief discussion with Johnson is not enough to conclude that Giffen had the apparent authority to act on Dr. Dansby's behalf.[10] Again, Dr. Dansby and Johnson did not even discuss the "Offer to Lease."
The law in Louisiana is well settled as to when a principal will be bound by the acts of an agent through apparent authority. A panel of this court has previously held that an agency relationship is never presumed; it must be clearly established. Bamburg Steel Buildings, Inc. v. Lawrence General Corporation, 36,005 (La. App.2d Cir.5/8/02), 817 So.2d 427. The court in Bamburg Steel Buildings, Inc. held that:
The burden of proving apparent authority is on the party seeking to bind the principal. A third party may not blindly rely on the assertions of an agent, but has a duty to determine, at his peril, whether the agency purportedly granted by the principal permits the proposed act by the agent.
Another panel of this court has further held that to trigger the concept of apparent authority, the third party must prove that the principal gave the third party reason to believe that the agent had authority to act on the principal's behalf with respect to the particular act taken. Casten v. Cordell, 26,487 (La.App.2d Cir.1/25/95), 649 So.2d 123. More recently a panel of our court has held that apparent authority cannot exist without a manifestation by the principal. American Zurich Insurance Company v. Johnson, 37,567 (La.App.2d Cir.7/30/03), 850 So.2d *912 1112. In the instant case, the Smiths admitted that they did not rely upon any representations from Dr. Dansby. Plaintiffs did not submit any evidence that Dr. Dansby, the principal, gave them reason to believe that Giffen had the authority to act on Dr. Dansby's behalf; and, therefore, there is no genuine issue as to a material fact regarding apparent authority in this case.

Detrimental Reliance
Plaintiffs further argue that Dr. Dansby had a duty to notify Plaintiffs as soon as he became aware of Giffen's signing the "Offer to Lease" to let them know that Giffen did not act on Dr. Dansby's behalf; and, because he did not notify them, they relied on Giffen's apparent authority to their detriment. Attempting to distinguish the case of Tedesco, supra, from the case sub judice, Plaintiffs assert that, in Tedesco, the third party did not claim that they relied on the actions of the agent to their detriment, whereas, in the instant case, Plaintiffs, as the third party, did rely on the actions of Giffen to their detriment. Plaintiffs again fail to recognize that the law looks to the actions of the principal and not the actions of the agent to determine first, if there was apparent authority and second, if the party relied on the actions of the principal to its detriment. Plaintiffs relied on the actions of Giffen in this case and not the principal, Dr. Dansby. In Tedesco, the court found that the third party relied on the apparent authority of the agent as a result of the actions of the principal. Since there is no showing by Plaintiffs in the instant case that the actions of Dr. Dansby caused Plaintiffs to believe that Giffen had the apparent authority to act on Dr. Dansby's behalf, then we need not discuss the second prong as to whether Plaintiffs relied on Giffen's apparent authority to their detriment.
Although Plaintiffs cite the Restatement (Second) of Agency § 8B (1958)[11] in support of their argument, we find that no Louisiana authority has cited this section in support of the argument that a principal, who has made no manifestation to a third party that his agent is authorized to contract with that third party, has a duty to notify the third party that the agent did not have the proper authority of the principal to contract with it. In addition, this section of the Restatement establishes that the principal must know of the third party's belief and Plaintiffs in the case sub judice have failed to show that Dr. Dansby knew that Plaintiffs incorrectly believed that Giffen was acting on behalf of Dr. Dansby.
In summary, Dr. Dansby met his burden in this case by showing that there was no genuine issue as to a material fact because Plaintiffs had not shown that Giffen was authorized to act on Dr. Dansby's behalf. The burden then shifted to Plaintiffs to set forth specific facts showing that a genuine issue as to a material fact still existed. We find that Plaintiffs did not satisfy that burden and, therefore, Dr. Dansby is entitled to judgment as a matter of law. *913 Plaintiffs' assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting Dr. Dansby's motion for summary judgment is affirmed. Costs of this appeal are assessed to Plaintiffs, Where Angels Tread, LTD, Bobby Elmer Smith and Janie Dupuy Smith.
AFFIRMED.
NOTES
[1] The actual doctors in the group remained undetermined at this time. Dr. Dansby stated in his deposition that he did ask Giffen to begin looking for a new location for an office, but that was the extent of what Giffen was to do and he was only one of among several people who were also looking for a new location.
[2] The "Offer to Lease" does not indicate that Giffen signed his name as an agent for Dr. Dansby, the Monroe Medical Clinic or any other entity. Two copies of the "Offer to Lease" are in the record. We note that there is a discrepancy between the two copies. One copy was submitted to the trial court as Exhibit A, attached to the "Memorandum in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment." At the bottom of this copy of the "Offer to Lease," Giffen has signed his name as the tenant and no other writing appears next to his name. The other copy submitted to the trial court was attached to Plaintiffs' "Petition for Damages for Breach of Contract for Lease and for Jury Trial." At the bottom of this copy of the "Offer to Lease," next to Giffen's signature, are the words "John GiffenManager Dansby & Brown, LLC." The entity, Dansby & Brown, LLC, however, is not a party to this lawsuit.
[3] The entity, Monroe Medical Clinic, however, is not a party to this lawsuit.
[4] Plaintiffs also filed this lawsuit against Ray Rhymes and Dr. Douglas Brown, alleging that Giffen had the authority to act on their behalf and bind them to the "Offer to Lease." Ray Rhymes served as Dr. Brown's business manager. Subsequently, Dr. Brown and Mr. Rhymes were dismissed from this lawsuit after the trial judge granted the Plaintiffs' own motion to dismiss them from the lawsuit.
[5] La. C.C. art. 2996 provides:

The authority to alienate, acquire, encumber, or lease a thing must be given expressly. Neither the property nor its location need be specifically described.
[6] The Tedesco decision sets forth that, in the sale of immovable property, written authority is required for an agent to execute either an agreement to sell or contract of sale. According to the court, an oral authorization is not enforceable.
[7] As previously stated, Dr. Dansby did have a brief contact with Johnson in Giffen's office, but the two did not discuss the "Offer to Lease." This further supports the conclusion that Dr. Dansby did not give Giffen actual authorization to confect a lease because surely, if Dr. Dansby knew that Giffen and Johnson were discussing a lease for him, then he would have at least mentioned it during his conversation with Johnson.
[8] We reiterate that the doctors involved remained undetermined at the time the "Offer to Lease" was signed by Giffen.
[9] Plaintiffs allege that Dr. Dansby continued negotiations after Giffen signed the "Offer to Lease" to buy the property, but they submitted no evidence to support this allegation.
[10] The record does establish that Dr. Dansby had previously purchased Mr. Johnson's house, showing that the two had a prior relationship.
[11] The Restatement (Second) of Agency § 8B (1958) provides:

(1) A person who is not otherwise liable as a party to a transaction purported to be done on his account, is nevertheless subject to liability to persons who have changed their positions because of their belief that the transaction was entered into by or for him, if
(a) he intentionally or carelessly caused such belief, or
(b) knowing of such belief and that others might change their positions because of it, he did not take reasonable steps to notify them of the facts. (Emphasis added.)