974 So.2d 777 (2007)
DORIAN M. BENNETT, INC.
v.
Charles C. SHANKLE, Jr. and the Shankle Partnership.
No. 2007-CA-0703.
Court of Appeal of Louisiana, Fourth Circuit.
December 28, 2007.
*778 William F. Wessel, Wessel & Associates, A Law Corporation, Victoria Lennox Bartels, Law Offices of Joseph C. Bartels, New Orleans, LA, for Plaintiff/Appellee, Dorian M. Bennett, Inc.
*779 Charles G. Shankle, Jr., Kings Beach, CA, in. Proper Person, Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES and Judge EDWIN A. LOMBARD).
JOAN BERNARD ARMSTRONG, Chief Judge.
The plaintiff, Dorian Bennett, Inc. (Bennett), brought suit against Charles Shankle, Jr. and The Shankle Partnership (Shankle) for a real estate commission. On February 5, 2002, Bennett filed suit in the Civil District Court for the Parish of Orleans alleging-that on or about April 16, 1999, Shankle entered into an authorization to lease agreement with Bennett whereby Bennett would act as a leasing agent for a residence owned by Shankle, located at 904 Dauphine Street in New Orleans. According to the terms of the agreement, Shankle would pay Bennett sixty percent of the first month's rent, and a commission of six percent on the gross amount of any sale or exchange of the property to any person procured by Bennett as a tenant or lessee. Bennett alleged that on or about July 1, 1999, it obtained James Kennedy as lessee for the property on conditions that were acceptable to Shankle. Ultimately, Shankle sold the property to Mr. Kennedy for $575,000. Despite amicable demand, Shankle refused to pay the contractual commission. Bennett sought the six percent commission with interest from the date of demand, for costs and for attorneys' fees.
On April 5, 2002, Shankle filed an answer, admitting that the partnership, as owner of the Dauphine Street property, entered into a lease on July 1, 1999, and ultimately sold the property to the lessee, James Kennedy. Shankle stated in the answer that the agreement with Bennett contained a provision calling for payment of a commission of six percent on the gross amount of any sale or exchange of, the above property to any person procured by Bennett as a tenant or lessee. Shankle also admitted that on July 1, 1999, Bennett acted as leasing agent for the lease of the Dauphine Street property by Shankle to Mr. Kennedy. Shankle claimed that the lease agreement also addressed the issue of the commission to be paid in the event of a sale, and that the blank space wherein the amount of the commission would have been entered was specifically and intentionally struck through to indicate that there would be no such commission. Thus, Shankle contends that the lease agreement modified the terms of the authorization to lease agreement and canceled its provision for payment of a sale commission. Shankle further denied that attorneys' fees were owed.
The matter proceeded to a bench trial, following which the trial court rendered judgment on March 13, 2007, in favor of the plaintiff in the amount of $34,500 together with legal interest from the date of demand and costs. Shankle has perfected the instant appeal from that judgment. For the reasons that follow, we affirm the judgment of the trial court.
In its reasons for judgment, the trial court found that the authorization to lease entered into by and between Bennett and Shankle on April 16, 1999, called for a six percent commission on the gross amount of any sale or exchange of the leased property to any person procured by Bennett as a tenant or lessee. Bennett obtained a tenant for the property, James Kennedy, who leased the property from Shankle. Although the price agreed upon between Shankle and Mr. Kennedy was $250 per month less than the rent requested in the authorization to lease, nonetheless Shankle entered into the lease agreement for seventeen *780 and one-half months, from July 15, 1999, to December 31, 2000. Mr. Kennedy continued to rent the property until approximately June of 2001 when Shankle sold the property to him.
The trial court found that the lease was signed solely by Shankle and Mr. Kennedy, and not by Bennett. The testimony shows that the agent who handled the lease between Shankle and Mr. Kennedy did not sign the lease on behalf of Bennett, but merely filled in the blanks. The trial court concluded that the testimony shows that the agent did not have the authority to alter the authorization agreement of April 16, 1999. The trial court found that the agent who handled the lease did not know the contents of the authorization agreement executed by Dorian M. Bennett on behalf of Bennett. The court accepted the testimony of the office manager and of Mr. Bennett that no agent had the authority to change any agreement signed by Mr. Bennett, and, in particular, the authorization to lease agreement at issue in this litigation. The trial court accepted Mr. Shankle's testimony that the Dauphine Street property was sold to Mr. Kennedy for $575,000.
Mr. Shankle identified the authorization agreement at trial on cross-examination, and admitted that he authorized Bennett to lease his property at 904 Dauphine Street on behalf of the Shankle partnership, of which his daughters were the sole partners, and testified that he had authority to, sign on behalf of the partnership. He also admitted that Bennett obtained Mr. Kennedy as a tenant for the property and that Mr. Kennedy purchased the property in 2001 from Mr. Shankle and the partnership for $575,000. He admitted having signed the authorization agreement on behalf of himself and of the partnership. The authorization agreement and demand letter were introduced into evidence without objection.
On direct examination, Mr. Shankle testified that Kate Hines, an agent of the Bennett corporation, inserted the dash that appears over the line in the lease agreement where the amount of a sales commission could be inserted. He did not recall having discussed elimination of the sales commission with Mr. Bennett, although Bennett was handling four or five million dollars' worth of property for Shankle at the time. He claimed that he would not have signed the lease and accepted $2300 monthly rent if he had known he would owe brokerage fees. He claimed that he spoke with the agent, thinking she represented Bennett, and she lined through the sales commission blank. However, notwithstanding his sophistication as the owner of millions of dollars of real estate managed by Bennett, Mr. Shankle did not ask Mr. Bennett to modify the terms of the authorization agreement.
Mr. Bennett testified that he is the broker owner of Dorian Bennett, Inc. and entered into the authorization agreement with Shankle on behalf of the corporation. He testified that Mr. Kennedy bought the property during his tenancy. Mr. Bennett testified that neither he nor the corporation entered into any amendment or written agreement of any sort to change the obligation contained in the authorization agreement to pay a sales commission. Only he had the authority to change that provision. Mr. Bennett testified that he has not received the sales commission provided for by the authorization agreement despite having requested payment from Shankle.
Under cross-examination, Mr. Bennett testified that he drew the authorization to lease document. He identified Kate Hines as an agent with Bennett, and noted that she is not a broker agent nor was she ever *781 a broker, to his knowledge. Mr. Bennett identified the lease between Shankle and Mr. Kennedy as a lease for the entire building located at 904 Dauphine Street. He testified that the authorization agreement provided that it would remain in full force and effect for a period of six months from April 16, 1999. According to Mr. Shankle, Bennett procured the lessee well within that six month period.
The lease provided for a monthly rental of $2300, reducible to $2250 if the rent were paid on the first of the month, not the $2500 specified in the authorization agreement. Mr. Bennett testified that he assumed that Kate Hines lined out the sales commission provision contained in the lease agreement; however, only Shankle and Mr. Kennedy were parties to the lease agreement. According to Mr. Bennett's testimony on cross-examination, the lease agreement between Shankle and Mr. Kennedy would not modify any agreement that Bennett had with Shankle with respect to the leasing or sale of the property. The lease is an agreement solely between the lessor, Shankle, and the lessee, Mr. Kennedy, and was not signed or intended to be signed by Bennett or its agent.
On re-direct examination, Mr. Bennett testified to his belief that Mr. Kennedy retained possession of the premises from the inception of the lease until the time he purchased the property from Shankle. He also testified that, assuming Ms. Hines lined out the blank in the sales commission provision in the lease, she had no authority to change the authorization agreement that provided for the six percent sales commission.
Georgia Saucier testified that at all times pertinent to the transactions at issue herein she was Bennett's manager. She identified the authorization agreement and Mr. Bennett's signature on the agreement. She testified that no one in the Bennett corporation, except Mr. Bennett, has authority to change listing agreements on behalf of Bennett.
On cross-examination, Kate Hines identified the lease agreement and testified that when she was working as a Bennett agent she drew up the lease on a standard residential lease form used by the Bennett office. At the time she drew up the lease, she was aware that there was an authorization agreement relating to the property, but was unaware of its terms and had not seen it prior to her preparation of the lease form. The only time her signature appears is in connection with a statutorily mandated lead disclosure statement attached to the lease agreement signed by Shankle and Mr. Kennedy. Her only connection with the transaction was to acknowledge that she had informed the lessor of its obligations under 42 U.S.C. 4582(d) and was aware of the responsibility to insure compliance.
On direct examination, Ms. Hines testified that she had not had any discussion with Mr. Shankle concerning the sale commission when she struck through the line. She said she did not know what the percentage was going to be. Furthermore, she testified that she did not have authority to change any Bennett listing agreement.
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly *782 erroneous or clearly wrong. Appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
Because. Shankle asserts that its obligation to pay the sales commission has been modified or extinguished by the execution of the lease agreement, it bears the burden of proving the facts or acts giving rise to the modification or extinction of that obligation. La.C.C. art. 1831.
In the first assignment of error, Shankle contends that the trial court erroneously relied solely on oral testimony to establish the lack of authority of Bennett, its real estate agent, Kate Hines, and office manager, Georgia Saucier, to amend or modify the authorization agreement[1] We note that Mr. Shankle did not testify that he spoke with Mr. Bennett about the sales commission at any time after the authorization agreement, providing for such a commission, was confected. The record contains only Mr. Shankle's unsupported testimony that it was not true that if he had an agreement with Bennett, both he and Mr. Bennett would have to agree to effect an amendment to the agreement.
Counsel for Mr. Shankle asked his client who marked through the commission line on the lease, and he replied, "Actually, Kate Hines marked through that line. We had talked about it, and as I remember she asked me about it. And that's what she did."
In response to his counsel's question, "[Y]ou change it [Bennett contracts] all the time with other people?", Mr. Shankle responded:
We negotiated, we thoughtI was dealing with an agent. I assumed the agent was representing or the broker would be responsible for anything that the agent did. I talked to the agent about the brokerage fees. And she marked through it. I would not have leased this property at $2300 if I had. known that I would have had to pay brokerage fees. I wouldn't have done it.
There is no testimony supporting the proposition that Ms. Hines or any other Bennett employee had authority to modify contracts entered into by Mr. Bennett on behalf of Bennett. The testimony of Mr. Bennett, Ms. Hines and Ms. Saucier to the contrary stands uncontradicted. The trial court's choice to accept the testimony of these three individuals is not unreasonable, considering the record as a whole.
Shankle, while recognizing in its brief the applicability of the manifest error standard *783 of review in the context of this appeal, contends that oral testimony without any corroborating documentation may not be used to establish the lack of an agent's authority to modify a principal's contract. We note that Bennett does not bear the burden of establishing Ms. Hines's lack of such authority: Under La.C.C. art. 1831, Shankle bears the burden of establishing Ms. Hines's authority. `Based on the record before us, we are compelled to conclude that Shankle has not met that burden.
Shankle argues that the Louisiana Supreme Court's opinion in Tedesco v. Gentry Development, Inc., 540 So.2d 960, 964 (La.1989) requires a contrary result. That case does not support Shankle's position. The Supreme Court held that while there is no express codal or statutory authority for the doctrine of apparent authority in Louisiana, it is an important part of the modern law of agency, and has been utilized by the courts in this state "to protect third persons by treating a principal who has manifested an agent's authority to third persons as if the principal had actually granted the authority to the agent." Tedesco v. Gentry Development, Inc., 540 So.2d at 963. In this case, the record contains no evidence to indicate that Bennett, the alleged principal, engaged in any prior transactions or in any activities with respect to the authorization agreement that would indicate that Ms. Hines had authority to modify that agreement or any agreement between Shankle and Bennett.
Shankle cites Tedesco for the proposition that testimonial evidence is inadequate to show a lack of agency. Notwithstanding that Bennett does not bear the burden of proof as to the agency issue, we note that Tedesco does not support the stated proposition. The court held that where a contract must be reduced to writing, testimonial proof is insufficient to prove the existence of the contract. Shankle argues the converse, that testimonial proof is insufficient to prove the non-existence of the contract. There is nothing in the Tedesco opinion to support that argument.
In the second assignment of error, Shankle contends that the trial court erroneously did not find or consider as a matter of law that Ms. Hines possessed apparent authority to modify the authorization to lease, absent documentary evidence to the contrary. Shankle argues that it "relied on the belief that Ms Hines had the apparent authority to execute the [lease]." However, the documentary evidence shows that Ms. Hines did not execute the lease. The record does not contain any evidence that Bennett clothed Ms. Hines with authority to modify the authorization agreement. One who seeks to benefit from the apparent authority doctrine may not blindly rely even on assertions of an agent. The person who deals with an agent, by the mere fact of agency, is given both the right and the duty to determine, at his peril, whether the agency purportedly granted by the principal will permit the proposed act by the agent. See Adams v. Louisiana Coca-Cola Bottling Co., Ltd., 531 So.2d 501 (La.App. 4th Cir.1988).
Shankle relies on the general rule of construction that a form prepared by one party to the contract is construed against the preparer. However, the corporation was not a party to the lease. Although it allowed its form to be used by Shankle and Mr. Bennett as a matter of convenience, Bennett did not by reason of that fact modify the authorization agreement it had entered into with Shankle.
We find no basis in law or in fact for the conclusion suggested by Shankle that Ms. Hines's signature on the lead paint disclosure form attached to the lease agreement constitutes Bennett's modification of the *784 earlier authorization agreement. There are a myriad of documents and disclosures that may from time to time be attached to contracts. To hold that a party appearing in such a document or disclosure becomes, ipso facto, a party to the basic contract would be unprecedented and would constitute an unauthorized change in Louisiana contract law.
We also note that Shankle did not contend in the trial court that the doctrine of apparent authority was applicable, but asserted that Ms. Hines had actual authority to bind Bennett, a contention wholly unsupported by the evidence of record.
In the third assignment of error, Shankle contends that the trial court erroneously did not find as a matter of law that a manifestation of agency may be demonstrated by the principal's ratifying acts. Shankle argues that by accepting the rental commission of sixty percent of the first month's rent, Bennett ratified the lease's lack of a sales commission. As a matter of law, agency may be demonstrated by acts of ratification. However, in a particular case, this demonstration must be proven by evidence of such acts of ratification. Bennett's acceptance of the rental commission at the commencement of the lease term demonstrates only that the company accepted the rental commission provided for in the authorization agreement. We find no basis on which to conclude that this act modified or deleted the sales commission provided for in the agreement.
The record is totally devoid of any evidence that Mr. Bennett, the only person who had authority, actual or apparent, to modify the terms of the authorization agreement, saw the executed lease agreement with the lined out blank in the lease's sales commission clause, prior to his acceptance of the rental commission.
Shankle also suggests that Bennett had an obligation to repudiate the lease between Shankle and Mr. Kennedy to avoid the application of the lined-out blank to modify the authorization agreement and eliminate its right to the sales commission provided for in the latter agreement. Again, we note that Bennett was not a party to the lease, and therefore was not in a position to repudiate it. His only action with regard to the lease was to accept the rental commission due upon its execution and the payment of the first month's rent, a commission due pursuant to the unmodified provisions of the authorization agreement.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] We find nothing in the record to indicate that Shankle alleged that Ms. Saucier modified or amended the authorization agreement.