CARLA F. GERDES

VERSUS

MONIQUE BRISCO WIFE OF/AND
CARL A. ROUEGE, JR.

NO. 22-CA-561

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 802-480, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING

June 07, 2023

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and Cornelius E. Regan, Pro Tempore

<u>**AFFIRMED AS AMENDED**</u>
    **FHW**
    **MEJ**
    **CER**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
CARLA F. GERDES
Sean R. Dawson

COUNSEL FOR DEFENDANT/APPELLANT,
MONIQUE ROUEGE
Miles G. Trapolin

**WICKER, J.**

This matter arises out of a contractual dispute between Carla Gerdes and Monique Rouege, for the purchase of a daycare business, Carlie Care, Inc., and a related bond for deed—subsequently canceled by agreement of the parties—to purchase the immovable property where the business was located. After a trial on the merits, the trial court found that the 2011 Agreement at issue, which included the note to purchase the daycare and the related bond for deed, was a valid agreement between the parties that novated a prior 2009 stock sale agreement for Carlie Care, Inc. between Ms. Gerdes and Ms. Rouege. The trial court rendered judgment in favor of Ms. Gerdes for the balance of the 2011 note in the amount of $352,809.72.[1] As to the canceled bond for deed contract, the Court further rendered judgment in favor of Ms. Gerdes in the amount of $552,955.07 for past due rent and repairs, but also rendered judgment in favor of Ms. Rouege for reimbursement of paid property taxes and insurances in the amount of $206,954.42, which resulted in a net judgment in favor of Ms. Gerdes in the amount of $346,000.65 related to the bond for deed contract.

Ms. Rouege, the purchaser, has appealed the trial court judgment, assigning multiple assignments of error surrounding the validity of the contract at issue. For the following reasons, we find that the trial court was not manifestly erroneous in its factual determination that the parties intended to novate the prior 2009 Agreement and that the 2011 Agreement was properly and legally executed.

Accordingly, we affirm the trial court's judgment insofar as it enforces the terms and conditions of the 2011 Agreement between the parties. However, because we find the trial court erred in awarding past due rent in a monthly amount in excess of that previously negotiated and agreed upon by the parties as the "fair

---

[1] The judgment awarded costs and 25% in attorney's fees pursuant to the contract as well as $25,414.94 in interest, in addition to 6.5% per annum interest from April 1, 2020 until paid.

market value" rent due under the bond for deed, we amend the judgment as to the amount it awards to Ms. Gerdes for the past due fair market value of rent due. In all other respects, we affirm.

## Factual and Procedural Background

This matter arises out of a contract dispute for the sale of a daycare business and a related bond for deed for immovable property. The trial judge issued extensive Reasons for Judgment, which set forth the facts established at trial as follows:

> In 2009, Ms. Gerdes approached Ms. Rouege, an employee of Carlie Care, Inc. ("Carlie Care"), regarding the potential sale of Carlie Care stock. On July 31, 2009, Ms. Rouege signed a one-year *Lease of Commercial Property* ("Lease") for the rental of 2032 Carol Sue Avenue in Terrytown, one of the buildings [owned by Mrs. Rouege] that housed Carlie Care. Ms. Rouege agreed to pay $5,000.00 per month rent, with the first six months of rent due on October 30, 2009. Under the lease, Ms. Rouege was responsible for building maintenance and repair, including the plumbing, sewerage and airconditioning systems. Ms. Rouege was also charged with obtaining and paying for general liability, fire and extended insurance for the building.
>
> On August 3, 2009, a few days after the Lease was signed, Ms. Gerdes sold one hundred (100%) of the Carlie Care, Inc. stock to Ms. Rouege for $300,000.00. Ms. Rouge signed a $331,000.00 promissory note payable to Carla Gerdes with a balloon payment due within ninety (90) days of August 1, 2009. Ms. Gerdes testified that the $331,000 represented the $300,000 purchase price for the Carlie Care stock plus the $30,000 Ms. Rouege had agreed to pay for six months of rent for the buildings. The difference of $1,000 represents the difference between the $6,000 loaned by Ms. Gerdes to Ms. Rouege for the $5,000 down-payment.
>
> Both parties testified that Ms. Rouege was working at Carlie Care in June of 2009, two months before she purchased the stock in August and that Ms. Rouege was aware she had to secure her own licenses. However, the testimony also established Ms. Rouege [who earned an undergraduate degree in Business Administration and a Master's degree in Business Management and Finance] did not obtain appraisals or valuations of the business, and she accepted the price suggested by Ms. Gerdes in 2009.
>
> The undisputed testimony adduced at trial was that Ms. Rouege paid nothing at all on the $331,000.00 note and very little in rent to Ms. Gerdes. Ms. Rouege testified she did not recall an exchange of physical stock certificates, and no evidence of transfer on the books of the corporation was presented. Although Defendants claimed Ms. Rouege was named President of Carlie Care, Inc. and Ms. Gerdes had no

ownership interest and was not a board member or officer after August 3, 2009, Ms. Rouege did not register her name with the Louisiana Secretary of State as an owner, officer or director of Carlie Care. Ms. Gerdes also filed at least one Annual Report with the Secretary of State in 2010, after the stock sale to Ms. Rouege.

On April 12, 2011, Ms. Gerdes, her husband Leo Heymann, Jr. ("Mr. Heymann"), and the Roueges entered into another transaction entitled, *"Agreement,"* whereby Ms. Gerdes represented herself to be the owner of Carlie Care, Inc. and Mr. Heymann asserted that Carlie Care was his wife's separate property. All parties acknowledged that while they had begun the process of transferring Carlie Care's assets in 2009, no consideration had actually changed hands other than minimal rent. In the 2011 *Agreement,* Ms. Gerdes sold Carlie Care's assets, but not its stock, to Defendants. Defendants executed the *Agreement,* and significantly, they did not claim that they, and not Ms. Gerdes, owned the Carlie Care stock. In addition to the sale of Carlie Care's assets, the 2011 *Agreement* also included a Bond for Deed for 2028-30 and 2032-34 Carol Sue Avenue.

Ms. Rouege acknowledged she signed the *Agreement* and a bearer promissory note for the sum of $357,865.00 for the sale of Carlie Care's assets on April 12, 2011. The April 12, 2011 note was payable in two installments of $2,300.00 each, commencing on February 8, 2011, and then 57 equal monthly installments of $2,000.00 each, commencing on April 8, 2011, due on the eighth of each succeeding month, with a final balloon installment of all unpaid interest and principal on January 8, 2016. The note provided that failure to pay an installment constituted a default. It also provided that if it became necessary to employ an attorney to enforce or recover [] all or part of the note, attorneys' fees were recoverable at twenty-five (25%) percent of the amount then due with interest and all costs.

The Roueges assert defenses of fraud, mutual error and duress. Defendants argue Ms. Gerdes did not own the assets of Carlie Care, Inc. in 2011, and she could not have sold the assets because Ms. Gerdes sold 100% of the stock to Ms. Rouege in 2009. Conversely, Ms. Gerdes contends the April 12, 2011 *Agreement* and promissory note constituted a novation of the 2009 stock sale and note and that the 2011 *Agreement* itself refers to the parties' 2009 attempt at a sale, with both parties acknowledging that no consideration was paid in 2009 other than minimal rent.

On June 23, 2020, Ms. Gerdes [and Ms. Rouege] executed a *Cancellation of Bond for Deed,* acknowledging Defendants had surrendered the keys to the building subject of the Bond for Deed, and the parties mutually agreed to cancel same. At the time the Bond for Deed was canceled, Ms. Rouege had occupied the Carol Sue property for almost eleven (11) years.[2] Ms. Gerdes later sold 2028-30 and 2032-34 Carol Sue Avenue to Da Village Eats, LLC for $440,000.

---

[2] The record on appeal reflects that Ms. Rouege continued to operate the daycare under the new name Carlie Care Kids, Inc. in the same location.

At the conclusion of trial, the trial judge took the matter under advisement. On June 29, 2022, the trial court rendered judgment in favor of Ms. Gerdes for the balance of the April 12, 2011 note for the sale of Carlie Care's assets in the amount of $352,809.72, in addition to attorneys' fees and interest pursuant to the terms of the 2011 Agreement.[3] As to the canceled bond for deed contract, the Court further rendered judgment in favor of Ms. Gerdes in the amount of $552,955.07 for past due rent and repairs[4], but also rendered judgment in favor of Ms. Rouege for reimbursement of paid property taxes and insurances in the amount of $206, 954.42, which resulted in a net judgment in favor of Ms. Gerdes in the amount of $346,000.65 related to the failed bond for deed. The judgment declined to award any attorney fees or costs related to the cancelled bond for deed.

In his extensive Reasons for Judgment, the trial judge determined that, by entering into the 2011 Agreement, the parties intended to novate or extinguish the 2009 stock sale agreement. The court found:

> The Court finds that the parties intended to novate the original 2009 obligations with the 2011 transactions. This is not the case of a mere rollover of unpaid interest from an earlier note to a later note or the case of a re-arranged, but substantially similar, set of transactions.

> In this case, the entire set of transactions changed and additional parties were added. The original *Sale of Stock* involved only Ms. Gerdes and Ms. Rouege and effected the sale of Carlie Care stock, not merely its assets. The 2009 transaction did not contain a Bond For Deed or other purchase of the property; instead, there was a separate one-year lease, but no sale, of Carlie Care's premises.

> The 2011 *Agreement,* on the other hand, involved new parties to the transaction, Mr. Heymann and Mr. Rouege. It involved only the purchase of Carlie Care's assets - but not the transfer of Carlie Care's liabilities or its stock to the Roueges. The 2011 *Agreement* referred to the 2009 transaction but all parties acknowledged that in 2009, no consideration actually changed hands other than "minimal rental payments" despite the existence of the written documents. The

---

[3] The judgment awarded costs and 25% in attorney's fees pursuant to the contract as well as $25,414.94 in interest, in addition to 6.5% per annum interest from April 1, 2020 until paid.

[4] Ms. Gerdes sought reimbursement for repairs to the property performed that she alleged were Ms. Rouege's responsibility pursuant to the parties' agreement. That portion of the judgment is not at issue on appeal.

Roueges did not contend when they executed the 2011 Agreement that they owned the Carlie Care stock, and not Ms. Gerdes, by virtue of the 2009 transaction. Instead, they acquiesced in the 2011 asset sale. The 2011 *Agreement* also incorporated a Bond for Deed for the purchase of 2028-30 and 2032-34 Carol Sue Avenue for $650,000, the same Bond for Deed that was later canceled.

The trial court found that the 2011 Agreement was a valid contract that was not vitiated by error, fraud, or duress under the facts of the case, pointing to "Ms. Rouege's educational background, her retention of legal counsel, and her employment at Carlie Care before engaging in the 2011 transactions, all of which militate against a finding of fraud, duress or excusable error." The trial court further determined that the contract was a divisible or conjunctive contract, as evidenced by the parties' consent to cancel the bond for deed but to continue to litigate the remaining note in the 2011 Agreement.

Ms. Rouege has appealed the trial court judgment, assigning multiple assignments of error surrounding the 2011 Agreement at issue, contending that (1) the 2011 Agreement should be vitiated for error, fraud, or duress; (2) Ms. Gerdes did not have capacity to sign the 2011 Agreement on behalf of Carlie Care, Inc. in her personal capacity and after she sold the stock to Ms. Rouege in the 2009 Agreement; (3) the 2011 Agreement is an indivisible contract and the cancellation of the bond for deed by the parties also by operation of law canceled the sale of assets within the 2011 Agreement; (4) the trial court erred in its finding that the parties intended to novate the 2009 Agreement by entering into the 2011 Agreement at issue; and (5) the trial court erred in awarding an amount of monthly rental payments due under the bond for deed contract higher than the amount negotiated and agreed upon by the parties. We will address each assignment of error in turn below.

## Law and Analysis

The 2011 Sale of Assets

On appeal, Ms. Rouege complains that the 2011 Agreement should be vitiated based on mutual error, fraud, or duress. A contract is defined as "an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. C.C. art. 1906. Interpretation of a contract is the determination of the common intent of the parties, and courts are obligated to give legal effect to contracts according to the true intent of the parties. La. C.C. art. 2045; *Semco, LLC v. Grand Ltd.*, 16-342 (La. App. 5 Cir. 5/31/17), 221 So.3d 1004, 1028-29, *writ denied*, 17-01291 (La. 11/6/17), 229 So.3d 475. Consent to a contract may be vitiated by error, fraud, or duress. *Hawkins v. Willow Inc.*, 15-71 (La. App. 5 Cir. 11/19/15), 181 So.3d 210, 217, *writ denied*, 15-2326 (La. 2/19/16), 187 So.3d 463, citing *Salassi v. Salassi,* 08-510 (La. App. 5 Cir. 5/12/09), 13 So.3d 670, 676 and La. C.C. art. 1948.

Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation. Age, health, disposition, and other personal circumstances of a party must be taken into account in determining reasonableness of the fear. La. C.C. art. 1959. Duress is to be considered in light of the subjective characteristics of the person whose consent is in question; however, Article 1959 also provides that the duress must be of such a nature as to cause a "reasonable fear" of unjust and considerable injury to a party's property or reputation in order to constitute legal duress. See *Broyles v. Ducote*, 21-0852 (La. App. 1 Cir. 6/14/22), 343 So.3d 902, 909-10; *Monterrey Ctr., LLC v. Education Partners, Inc.,* 08-0734 (La. App. 1st Cir. 12/23/08), 5 So.3d 225, 230.

"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La. C.C. art. 1953. "Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent." La. C.C. art. 1955. Nevertheless, fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. *Shelton v. Standard/700 Assocs.*, 01-0587 (La. 10/16/01), 798 So.2d 60, 64. However, this exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations. La. C.C. art. 1954.

In pleading fraud, the circumstances constituting fraud must be alleged with particularity. La. C.C.P. art. 856. However, fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art. 1957. In sum, there are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract. *Shelton*, 798 So.2d at 64.

The Louisiana Supreme Court has stated that error vitiates consent in one of two ways: mutually, where both parties are mistaken, or unilaterally, where only one party is mistaken. Louisiana courts have often refused relief when the mistake is unilateral; such error will vitiate consent only if the other party knew or should have known that "the matter affected by the error was the cause of the obligation for the party in error, that is, that it was the reason he consented to bind himself."

La. C.C. art. 1949, Rev. Cmt. 1984, cmt. (c); *Semco, LLC*, 221 So.3d at 1029-30; *see also Broyles v. Ducote,* 21-0852 (La. App. 1 Cir. 6/14/22), 343 So.3d 902, 912.

Therefore, while rescission is permitted if the error is unilateral, the error must be excusable, meaning "the party in error did not fail to take elementary precautions that would have avoided his falling into error[.]" *Semco, LLC*, 221 So.3d at 1029, quoting *Peironnet v. Matador Res. Co.*, 12-2292 (La. 06/28/13), 144 So.3d 791, 810. Whether a unilateral error is excusable is determined according to the particular circumstances surrounding each case. Contractual negligence, such as failure to read a contract one signed, is not excusable and, thus, rescission is not an appropriate remedy. *Id.* Further, an error made by a professional, concerning a matter directly within his field of expertise, would be regarded as inexcusable error and, thus, rescission for such unilateral error is not appropriate. *Id.* at 130 (quotations omitted).

On appeal, Ms. Rouege contends that the trial court erred in failing to find that the 2011 Agreement should be vitiated for error, fraud, or duress, asserting that Ms. Gerdes fraudulently withheld information concerning the value of Carlie Care prior to the sale or that she only entered into the agreement under duress by Ms. Gerdes. Ms. Rouge further contends that the error reflects mutual error because neither party understood that Ms. Gerdes had already transferred the Carlie Care stock in 2009 and, thus, was not able to enter into the 2011 Sale of Assets. Concerning these arguments, the trial court found:

> The Court finds no evidence that Ms. Gerdes caused Defendants to have a reasonable fear of unjust injury to their persons, property or reputation. Ms. Rouege testified that the only threat to her is that she "would have to get out." A threat of doing a lawful act or exercising a right - such as evicting Ms. Rouege for her failure to timely pay rent under the original lease or filing suit for Ms. Rouege's failure to make any payments under the 2009 promissory note - is not duress sufficient to vitiate the Defendants' consent to the 2011 *Agreement.*[5]

---

[5] The trial court further pointed to a trial exhibit, which contained notes from Ms. Rouege to Ms. Gerdes apologizing for delayed payments, and thanking Ms. Gerdes by stating, "thank you for everything" and "I really appreciate you and everything you have done for me."

*       *       *

[T]he Roueges did not prove that Ms. Gerdes misrepresented, suppressed or omitted any information. Ms. Rouege had worked for Carlie Care for 21 months before engaging in the aforesaid transactions in 2011. Thus, she was aware of the number of children enrolled at the facility and the status of day care licenses. Ms. Rouege also participated in the 2009 transactions and was aware of their contents. Ms. Rouege acknowledged she worked in the daycare for two months before the 2009 transactions, as well as afterward, so she was aware of the operations of the business and its licensing. Ms. Rouege had also previously earned an undergraduate degree in Business Administration and a Masters degree in Business Management and Finance, and she also had consulted with an attorney before executing the 2011 *Agreement.*

Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience or special skill. The Court finds that the Roueges could have ascertained the truth - namely that, according to Defendants, Ms. Gerdes allegedly did not own the stock but rather Ms. Rouege did (despite her failure to pay the note), and that Carlie Care allegedly had no licenses, children or employees - without difficulty, inconvenience or special skill. Therefore, the Court finds that due to the Roueges' ability to easily ascertain the truth prior to the execution of the 2011 *Agreement,* there was no fraud which vitiates the parties' consent to the 2011 *Agreement*.

*       *       *

In addition to Ms. Rouege's educational background, her retention of legal counsel, and her employment at Carlie Care before engaging in the 2011 transactions, all · of which militate against a finding of fraud, duress or excusable error, the Court notes that Ms. Rouege made multiple payments toward the April 12, 2011 *Agreement* and promissory note, one as late as December 5, 2019, within days of the filing of the *Petition* in this matter.

Upon review of the record, we find that the trial court was not manifestly erroneous in its determination that Ms. Rouege freely and voluntarily entered into the 2011 Agreement for the sale of Carlie Care Inc.'s assets and, thus, in determining that the 2011 Agreement could not be vitiated based on error, fraud, or duress.

Ms. Rouege on appeal further contends that the 2011 Agreement cannot be enforced, asserting that when the parties voluntarily canceled the bond for deed

contract, it necessarily canceled the sale of assets as well. Ms. Rouege argues that the 2011 Agreement is an indivisible contract that cannot be partially canceled or enforced.

A contract or obligation is divisible when the object of the performance is susceptible of division. *Gloria's Ranch, L.L.C. v. Tauren Expl., Inc.*, 17-1518 (La. 6/27/18), 252 So.3d 431, 443. An obligation is indivisible when the object of the performance, because of its nature or because of the intent of the parties, is not susceptible of division. La. C.C. art. 1815. An obligation is indivisible when the performance of the obligation cannot be divided or when partial performance would be of little or no use to the obligee. *Id.*; *Sweet Lake Land & Oil Co. LLC v. Exxon Mobil Corp.*, 9-1100, 2011 WL 5825791 (W.D. La. 11/16/11), *citing* 5 Saul Litvinoff, Louisiana Civil Law Treatise, Law of Obligations § 9.2 (2011). An obligation is conjunctive when it binds the obligor to multiple items of performance that may be separately rendered or enforced. In that case, each item is regarded as the object of a separate obligation. The Civil Code provides that "[a]n obligation is conjunctive when it binds the obligor to multiple items of performance that may be separately rendered or enforced. In that case, each item is regarded as the object of a separate obligation." La. C.C. art. 1807; *HDRE Bus. Partners Ltd. Grp., L.L.C. v. RARE Hosp. Int'l, Inc.*, 834 F.3d 537, 541-42 (5th Cir. 2016).

Concerning the divisibility of the contract, the trial court found that the 2011 Agreement containing the bond for deed and the sale of assets is a divisible obligation. The 2011 Agreement contains two separate titled provisions, one provision titled the "Sale of Assets of Carlie Care, Incorporated" and a second provision titled, "Bond for Deed Related to Immovable Property." The sale of the assets of Carlie Care, Inc. and the sale of the immovable property are obligations that can be separately rendered or enforced. The record reflects that the parties in

fact voluntarily consented to the cancellation of the bond for deed contract, reserving with the cancellation the right to proceed with remaining claims in this litigation. We find no error in the trial court's finding that the 2011 Agreement is a divisible contract.

Ms. Rouege further assigns as error the trial court's holding that the 2011 Agreement was a novation that extinguished the previous 2009 stock sale. Novation is the extinguishment of an existing obligation by the substitution of a new one. La. C.C. art. 1879. "Novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation. La. C.C. art. 1881. Comment (c) to Article 1881 explains that, "[n]ovation takes place when a new obligation is substituted for an old one, which is thus extinguished. Such a substitution occurs whenever at least one of the basic elements of the original obligation is changed. The basic elements of an obligation are the parties to it, its object, and its cause."

For a novation to occur, the parties' intention to extinguish the original obligation must be clear and unequivocal. La. C.C. art. 1880. Novation may not be presumed, and the burden of proving novation falls on the party who seeks its protection. La. C.C. art. 1880; *Ciolino v. First Guaranty Bank,* 12-2079, 12-2080 (La. App. 1 Cir. 10/30/13), 133 So.3d 686, 691. The determining factor is the intention of the parties. The intention to novate may be shown by the character of the transaction, the facts and circumstances surrounding it, as well as by the terms of the agreement itself. *Schillace v. Channell Shopping Partnership,* 623 So.2d 45, 47 (La. App. 1st Cir. 1993); *GE Com. Fin. Bus. Prop. Corp. v. Louisiana Hosp. Ctr., L.L.C.,* 10-1838 (La. App. 1 Cir. 6/10/11), 69 So.3d 649, 656; *Atl. Pac. Equip., Inc. v. Gulf S. Servs., Inc.*, 21-0438 (La. App. 1 Cir. 5/18/22), 342 So.3d 898, 902.

The trial court, after considering the evidence presented at trial, made the following factual determinations and findings:

The Court finds that the parties intended to novate the original 2009 obligations with the 2011 transactions. This is not the case of a mere rollover of unpaid interest from an earlier note to a later note or the case of a re-arranged, but substantially similar, set of transactions.

In this case, the entire set of transactions changed and additional parties were added. The original *Sale of Stock* involved only Ms. Gerdes and Ms. Rouege and effected the sale of Carlie Care stock, not merely its assets. The 2009 transaction did not contain a Bond For Deed or other purchase of the property; instead, there was a separate one-year lease, but no sale, of Carlie Care's premises. The 2011 *Agreement,* on the other hand, involved new parties to the transaction, Mr. Heymann and Mr. Rouege. It involved only the purchase of Carlie Care's assets - but not the transfer of Carlie Care's liabilities or its stock to the Roueges.

The 2011 *Agreement* referred to the 2009 transaction but all parties acknowledged that in 2009, no consideration actually changed hands other than "minimal rental payments" despite the existence of the written documents. The Roueges did not contend when they executed the 2011 Agreement that they owned the Carlie Care stock, and not Ms. Gerdes, by virtue of the 2009 transaction. Instead, they acquiesced in the 2011 asset sale. The 2011 *Agreement* also incorporated a Bond for Deed for the purchase of 2028-30 and 2032-34 Carol Sue Avenue for $650,000, the same Bond for Deed that was later canceled.

Upon review of the record and considering the testimony presented at trial concerning the parties' actions and intent surrounding the 2011 Agreement, we find that the trial court was not manifestly erroneous in his finding that the parties' intent in executing the 2011 Agreement was to extinguish the 2009 stock sale and enter into a new agreement for the sale of Carlie Care's assets as well as the bond for deed to sell immovable property.[6]

Ms. Rouege further challenges the trial court judgment, contending that the trial court erred in applying the concept of agency by estoppel to find that Ms.

---

[6] Compare *U.S. Bank Tr. Nat'l Ass'n, as Tr. of Lodge Series III Tr. v. Parks*, 22-56 (La. App. 5 Cir. 11/2/22), 353 So.3d 228, 234 (wherein the court held that a novation didn't exist when the Loan Modification Agreement clearly showed an intent to simply modify a former agreement and the modification specifically stated, "'[n]othing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.'")

22-CA-561                                        12

Rouege could not challenge Ms. Gerdes' legal capacity or authority to enter into the 2011 Agreement after she had already sold Carlie Care's stock to Ms. Gerdes in the 2009 stock sale. Ms. Rouege contends that because Ms. Gerdes sold the Carlie Care stock in 2009, she did not have capacity or authority to sell Carlie Care's assets in 2011. Ms. Rouege seeks to rescind the 2011 Agreement on this basis.

The theory of agency by estoppel allows a third party to recover against a principal for the action of one who acted as the principal's agent despite lacking the necessary authority to do so. The Louisiana Supreme Court has explained the grounds for agency by estoppel as "based on tort principles of preventing loss by an innocent person." *Tedesco v. Gentry Dev., Inc.,* 540 So.2d 960, 964 (La. 1989); *Biever Realty-Benjamin, L.L.C. v. Royal Alice Properties, L.L.C.*, 16-0080 (La. App. 4 Cir. 8/31/16), 200 So.3d 968, 972, *writ denied*, 16-1780 (La. 11/29/16), 211 So.3d 387. The third person not only must show reliance on the conduct of the principal, but also must show such a change of position on his part that it would be unjust to allow the principal to deny the agency. *Tedesco*, *supra*. A contract made by a person without legal capacity is relatively null and may be rescinded only at the request of that person or his legal representative. La. C.C. art. 1919; see also *In re Interdiction of Gambino*, 21-00267 (La. 4/20/21), 313 So.3d 1239, 1240, *reh'g denied*, 21-00267 (La. 6/22/21), 318 So.3d 46.

We find the trial court correctly determined that Carlie Care, Inc., not Ms. Rouege, would be the proper party to complain of Ms. Gerdes' capacity to enter into the 2011 Agreement. The doctrine of agency by estoppel may be applicable to allow Ms. Rouege to *bind* or *enforce* the 2011 Agreement at issue, which is not what Ms. Rouege seeks to do in this case. We find that the trial court did not err in

finding that Ms. Rouege could not seek to rescind the 2011 Agreement by challenging Ms. Gerdes' capacity. This assignment of error lacks merit.[7]

Bond for Deed

The only assignment of error related to the bond for deed on appeal concerns the amount awarded to Ms. Gerdes for past due rental payments. Specifically, Ms. Rouege assigns as error: "The Trial Court erred when it did not enforce the stipulated fair market rent for the property in the even[t] of default by Rouege." Ms. Rouege explains that, "[i]n the event of breach of the bond for deed, the parties negotiated a fair market rental price for the property. The trial court erred when it ignored the clear language of the contract and the testimony of the parties that the rental amount was stipulated." We agree.

The trial court in its thorough Reasons for Judgment found:

> In this case, the parties consented to the cancellation of the Bond for Deed contract on July 7, 2020. Thus, as confirmed by her testimony, Ms. Rouege occupied the Carol Sue buildings for almost eleven (11) years before ceding possession back to Ms. Gerdes.
>
> Jurisprudence has established the appropriate adjustments to be made in the event of a failed Bond for Deed transaction. Regardless of penalty or forfeiture clauses actually contained in the Bond for Deed contract, the vendor in a Bond for Deed contract is not entitled to retain all monies paid by the purchaser. The law is clear that such forfeiture clauses should be regarded as null and void as they are inequitable, unreasonable, and represent an illegal attempt to recover punitive, rather than compensatory, damages. The purchaser is entitled to the return of all monies paid on the purchase price, including the down payment and all monthly installments, the insurance premiums and the taxes paid. Concomitantly, the seller is entitled to an allowance for the fair rental value of the property during the period of the purchaser's occupancy.
>
> The testimony established that Ms. Rouege obtained the Sandoz appraisal on the buildings. It provided that the gross building and finished area of the Carol Sue property was approximately 6,544 square

---

[7] Relatedly, Ms. Rouege complains that Ms. Gerdes did not have the authority to enter into the 2009 stock sale, contending that she did so in her personal capacity. First, we find that because the trial court correctly determined that the 2011 Agreement novated and extinguished the 2009 stock sale agreement— and that the parties freely and voluntarily entered into a new, 2011 Agreement—we need not reach the issue of Ms. Gerdes' authority to enter into the 2009 sale. Nevertheless, Ms. Gerdes testified at trial that she was 100% owner of Carlie Care, Inc. and that she did not ever transfer any physical stock certificates for Carlie Care, Inc. to Ms. Rouege pursuant to the 2009 contract.

feet. Mr. Sandoz opined that the lease comparables of day cares (or office facilities with day care potential) ranged from $8.00 to $12.22 per square foot annually, but all were smaller than the subject property. Taking a median figure of $10 per square foot, Mr. Sandoz estimated potential annual income for the subject property to be $65,440 (or $5,453.33 per month).

The Affidavit of Kenneth Kopecky, a licensed professional real estate agent and owner of NOLA Property Managers, Inc., was introduced as Trial Exhibit No. 32. Mr. Kopecky established the square footage of the subject premises at 6,560 square feet, and he opined the fair market rent under a triple net lease for the subject property would be $5,576 per month.

The Affidavit of G. Geoffry Lutz, another licensed general real estate appraiser, was admitted as Trial Exhibit No. 31. Mr. Lutz established a fair market triple net rental value of $4,000 per month for the subject property. Mr. Lutz explained that the market rental value was reduced due to several factors including that the property was two buildings, not one, and the property was used as a day care facility which is a specialized and limited rental market.

The Court will accept $9 per square foot as a fair rental value times 6,544 square feet for a total of $58,896 per year, or $4,908 per month, for 112.5 months, or a total of $552,150.00.

In this case, the bond for deed contract executed between the parties specifically provided for a fair market rental value in the event of default. The contract provided that, "[t]he parties further agree that the monthly payments of $3,500.00 are a fair rental value of the premises when also taking into consideration the payments of $2,000.00 per month being made for the assets of the business known as Carlie Care, Incorporated." Both parties testified at trial that they discussed a fair market rental value and that Ms. Gerdes initially sought $5,000.00 per month, but that the parties negotiated the amount to a fair market monthly rental value of $3,500.00.[8]

Contracts have the effect of law upon the parties, and the courts are bound to give legal effect to all contracts according to the common intent of the parties. This intent is determined by the words of the contract when they are clear and explicit

---

[8] The negotiations between the parties also considered the monthly payment due toward the sale of Carlie Care's assets, which the trial court also enforced and found Ms. Rouege liable to pay.

and lead to no absurd consequences. *Lamar Contractors, LLC v. SRF Grp. Consulting, LLC*, 22-213 (La. App. 5 Cir. 2/1/23), 358 So.3d 907, 912, *writ denied*, 23-00305 (La. 5/23/23), 2023 WL 3595237, and *writ denied*, 23-00308 (La. 5/23/23), 2023 WL 3595239.

Upon review of the language as provided in the contract and further considering the testimony and evidence presented at trial, we find that the trial court erred in calculating an award based on a monthly fair market rental payment in an amount in excess of the $3,500.00 amount negotiated and agreed upon by the parties in the bond for deed contract. The Court calculated the award with a monthly rental value of $4,908 per month, for 112.5 months, or a total of $552,150.00. Accordingly, we vacate that portion of the trial court judgment, and amend the judgment to reflect the agreed upon fair market rental value of $3,500.00 per month, for 112.5 months, or a total of $393,750.00. This decreases the final net judgment in favor of Ms. Gerdes by $158,400.00, resulting in a total net judgment in favor of Ms. Gerdes of $187,600.65.

## Conclusion

Accordingly, for the reasons provided herein, the trial court judgment is amended to correct the amount awarded in past due rental payments to $393,750.00, resulting in a total net judgment in favor of Ms. Gerdes and against Ms. Rouege in the amount of $187,600.65. In all other respects, the judgment is affirmed.

**AFFIRMED AS AMENDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JUNE 7, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-561

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
SEAN R. DAWSON (APPELLEE)          MILES G. TRAPOLIN (APPELLANT)

**MAILED**
MARIA I. O'BYRNE STEPHENSON
(APPELLEE)
ATTORNEY AT LAW
400 POYDRAS STREET
SUITE 1990
NEW ORLEANS, LA 70130